UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————

№ 06 Civ. 5981 (RJS) (KNF)

———————————

MARTIN KEANE and CHARLIE HALL, SR.,
as Trustees and Fiduciaries of the Union Mutual Fund,

Plaintiffs,

VERSUS

ZITOMER PHARMACY, INC.,

Defendant.

———————————

MEMORANDUM AND ORDER
February 23, 2010

———————————

RICHARD J. SULLIVAN, District Judge:

Plaintiffs Martin Keane and Charlie Hall, Sr., as trustees and fiduciaries of the Union Mutual Fund (the "Fund"), bring this action pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145, against Defendant Zitomer Pharmacy, Inc., alleging that Defendant failed to make contributions to the Fund between January 1, 2003 and December 31, 2005 as required under the collective bargaining agreement to which Defendant was a party. Now before the Court are the parties' cross-motions for summary judgment. For the reasons stated below, the Court grants Plaintiffs' motion and denies Defendant's motion.

I. BACKGROUND[1]

A. Zitomer

Defendant operates a retail store at 969 Madison Avenue in Manhattan. (Def.'s 56.1 ¶ 3.) In addition to a pharmacy on the first floor, the store includes a toy department called Zittles on the second floor and a children's clothing department called Kiddles on the third floor. (*Id.* ¶¶ 12-14.)

B. The History of the CBA

In the early 1970s, Defendant entered into a collective bargaining agreement with the Allied Trades Council (the "Union") that was negotiated by the Manhattan Pharmacists Association (the "Association"). (Pls.' 56.1 ¶¶ 22-24.) Herbert Pobiner, the president of the Association, and George Barasch, a representative of the Union, were the individuals who actually negotiated the contract. (*Id.*)

Pobiner testified at his deposition that in the early 1970s, Howard Sternheim, who then owned Zitomer, decided to provide Zittles and Kiddles employees' health benefits directly, rather than through the Fund. (Decl. of Nathan V. Bishop in Supp. of Pls.' Mot. ("Bishop Decl.") Ex. 2 (Dep. Tr. of Herbert Pobiner (Pobiner Dep. Tr.)) at 28:20-22.) Pobiner therefore reached an agreement with Barasch that employees of Zittles and Kiddles would not be covered by the collective bargaining agreement.

As Pobiner testified, "I sat down with Mr. Barasch, I discussed it completely, and I said, you know, Mr. Barasch, these departments are not drugstore departments, the people there are getting their benefits [directly from the store], and we worked out a deal where only the drugstore portion of . . . Zitomer Pharmacy would be included in the union negotiation. The rest of the store would be excluded." (*Id.* at 29:17-30:3.)

The deal that Pobiner and Barasch reached, however, was not reduced to writing and incorporated into the collective bargaining agreement. (*Id.* at 30:4-7.) As the collective bargaining agreement was revised and renewed over the intervening years, the language that the negotiators agreed on — discussed below — remained substantially unchanged from the early 1970s through the 2003 agreement that is at issue in this case. (*See id.* at 29:24-30:3.)

C. The 2003 Collective Bargaining Agreement

The agreement covering the time period at issue in this case is dated January 21, 2003, and it is retroactive as of November 1, 2002. (Decl. of Linda Kellner in Supp. of Pls.' Mot. Ex. B. ("CBA") at 1.) The parties do not dispute that the agreement was in effect for the entire period between January 1, 2003 and December 31, 2005. (Pls.' 56.1 ¶¶ 9-10.)

---

[1] The following facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with the motions. Where only one party's Rule 56.1 statement is cited, the opposing parties do not dispute that fact or have offered no admissible evidence to controvert that fact. Citations to additional facts in the Discussion section follow the same conventions. The abbreviation "Pls.' 56.1" refers to Plaintiffs' Local Rule 56.1 statement in support of their motion for summary judgment, while "Def.'s 56.1" refers to Defendant's Local Rule 56.1 statement in support of their motion for summary judgment.

The agreement requires each covered employer to pay the Fund $24 per week for each employee "who is employed within the bargaining unit . . . regardless of whether such employee is a member of the union." (CBA at 14.) It further provides that when the word "employees" is used in the agreement, it refers to persons "employed by members of the [Manhattan Pharmacists] Association, and shall refer to all such persons whether or not they are members of the Union." (*Id.* at 1.) It then defines the "bargaining unit" by providing that the Union is "the sole bargaining agent for all employees, excluding executives, non-working supervisors, and armed guards." (*Id.*)[2]  Finally, the agreement provides that "[a]ll prior agreements between the parties shall be deemed, [sic] terminated and considered to be null and void as of the date of this Agreement." (*Id.* at 17.)

Although the agreement provides that "[a]ll employees shall, as a condition of continued employment become and remain members of the Union in good standing after they have completed thirty days of employment" (*id.* at 1-2), none of the employees working in Zittles or Kiddles is a member of the Union. (*Id.* ¶ 18.)

---

[2]  Although the contract explicitly defines only the bargaining *agent*, this language serves to indirectly define the bargaining *unit*, as a bargaining unit is a group represented by the bargaining agent. *See, e.g.*, *Pierce County Hotel Employees & Rest. Employees Health Trust v. Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1987) ("Article I of each collective bargaining agreement recognizes the Union as the exclusive bargaining agent of all Lodge employees working in the specified classifications. . . .Thus, nonunion temporary employees performing work in the agreements' specified classifications are members of the bargaining unit . . . .").

D. Procedural History

Plaintiffs filed their Complaint on August 4, 2006, and the case was assigned to the Honorable Kenneth M. Karas, District Judge. Defendant's Answer was filed October 27, 2006. On September 4, 2007, the case was reassigned to the docket of the undersigned, and on February 2, 2008, the Honorable Kevin Nathaniel Fox, Magistrate Judge, to whom this case was referred for pre-trial supervision by Judge Karas, granted Defendant's motion to amend its Answer to include the affirmative defense of mutual mistake. Defendant thereafter filed an amended Answer on March 27, 2008.

On March 24, 2009, the parties filed cross-motions for summary judgment. The motions were fully submitted as of May 5, 2009, and the Court held oral argument on the pending motions on February 8, 2010.

II. LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility

3

assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

### III. DISCUSSION

In support of its contention that it is not obligated to make Fund contributions on behalf of Zittles and Kiddles employees, Defendant makes essentially two arguments: (1) the contract, when properly interpreted, does not require such contributions, and (2) if the contract does require such contributions, it is the result of a mutual mistake among the parties.

#### A. Contractual Interpretation

#### 1. Applicable Law

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plans or such agreement." 28 U.S.C. § 1145.

The Second Circuit has explained that "benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990). Accordingly, it is no defense to a claim under Section 515 "that the union orally agreed not to enforce the terms of the collective bargaining agreement, that the employer was fraudulently induced to enter into the agreement, or that no contract was formed because of unilateral or mutual mistake of fact." *Id.* (citations omitted). Because benefit plans must rely on employers' promises, there are "only two defenses recognized by the courts: (1) that the pension contributions themselves are illegal, and (2) that the collective bargaining agreement is void (not merely voidable)." *Id.* (citations omitted).

In *DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651 (2d Cir. 1994), the Second Circuit clarified that benefit funds "are not entitled to enforce a nonexistent contractual obligation." *Id.* at 653-54 (internal quotation marks omitted). Thus, the court explained that "[t]o the extent that [an] ambiguity exists, a textual analysis of the Agreement may be supplemented by an exploration of extrinsic evidence concerning the parties' intent." *Id.* at 654. Nevertheless, while *DeVito* holds that courts may consider extrinsic evidence to interpret an ambiguous collective bargaining agreement, recourse to extrinsic evidence is only proper where a facial ambiguity exists. *See, e.g.*, *Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp.*, 230 F.3d 569, 576 (2d Cir. 2000) ("Only when provisions are ambiguous may courts look to extrinsic factors — such as bargaining history, past practices, and other provisions in the CBA — to interpret the language in question."); *Roca v. Guardian Transp. Co.*, No. 99 Civ. 4996

4

(LMM) (HBP), 2002 WL 31082959, at *5 (S.D.N.Y. Sept. 16, 2002) ("[W]hile extrinsic evidence may be used to shed light on ambiguous collective bargaining agreements, it cannot be used when the terms of the agreement are unambiguous."). Critically, Defendants may not use extrinsic evidence to establish the ambiguity of a facially unambiguous collective bargaining agreement. *See, e.g.*, *Strom v. Siegel Fenchel & Peddy P.C. Profit Sharing Plan*, 497 F.3d 234, 244 n.6 (2d Cir. 2007) ("Whether ERISA plan language is ambiguous is a question of law that is resolved by reference to the contract alone." (internal quotation marks omitted)).

"'Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *In re Delta Airlines Inc.*, 313 F. App'x 430, 434 (2d Cir. 2009) (quoting *Seiden Assocs. Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)). By contrast, contract language "is unambiguous when it has a definite and precise meaning and where there is no reasonable basis for a difference of opinion." *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

2. Analysis

Applying the law discussed above to the 2003 collective bargaining agreement, the Court concludes that its language is unambiguous and that recourse to extrinsic evidence would be improper. The CBA explicitly provides that each employer is obligated to pay $24 per week "for each employee who is employed within the bargaining unit . . . *regardless of whether such employee is a member of the union.*" (CBA at 14 (emphasis added).) Employees are expressly defined as "persons employed by . . . members of the [Manhattan Pharmacists] Association . . . whether or not they are members of the Union." (*Id.* at 1.) Finally, the agreement defines the "bargaining unit" by providing that the Union is "the sole bargaining agent for all employees, excluding executives, non-working supervisors, and armed guards." (*Id.*) Thus, Defendant is expressly bound to make contributions for all employees within the bargaining unit, regardless of whether those employees are union members. There simply is no ambiguity on the face of the agreement.[3]

To support its argument that the collective bargaining agreement is ambiguous, Defendant relies almost entirely on evidence outside the four corners of the document. *See,*

---

[3] In allowing Defendant to amend its Answer to include the affirmative defense of mutual mistake, Magistrate Judge Fox noted the Federal Rules' command to "freely give leave to amend pleadings" (Doc. No. 33) and stated that "ambiguity seems to exist here." (Conf. Tr. Feb. 26, 2008, at 12:16.) The Court declines Defendant's invitation to treat this statement as the law of the case. *See, e.g.*, *Millgard Corp. v. E.E. Cruz*, No. 99 Civ. 2952 (LBS), 2003 WL 22801519, at *1 (S.D.N.Y. Nov. 23, 2003) ("Millgard initially asserts that because this Court granted its earlier motion to amend its complaint by adding the sixth cause of action, it may rely upon the 'law of the case' to survive the JV's motion for summary judgment as to this claim. This view is mistaken. This Court's decision to permit amendment of the complaint in no sense constituted a definitive determination as to its validity."); *Care Environ Corp. v. M2 Techs., Inc.*, No. 05 Civ. 1600 (CPS), 2006 WL 148913, at *8 (E.D.N.Y. Jan. 18, 2006) ("[T]he decision to grant a request to amend a complaint and the decision to deny a motion to dismiss are two different issues, and one cannot constitute the law of the case for the other.").

*e.g.*, Def.'s Mem. at 14 ("It was the intent of the parties that the foregoing language was restricted to Zitomer's employees in its pharmacy operation."); *id.* at 15 ("The historical fact is that the CBA was never applied, or interpreted, to cover any other employees than those in Zitomer's pharmacy operation."); *id.* at 16 ("The past dealings of contracting parties pursuant to an agreement are probative of the parties' intent."); *id.* at 17 ("The Funds' conduct also reflects their understanding that the collective bargaining agreement did not require payments for the non-union employees of Zittles and Kiddles."). As noted above, however, Defendant may not use extrinsic evidence to demonstrate the existence of an ambiguity. *See Strom*, 497 F.3d at 244 n.6.

At oral argument, Defendant also argued that the term "employees" is used ambiguously in the CBA, insofar as it seems to require employers to make Fund contributions on behalf of certain people who are defined as "employees" but are not members of the bargaining unit (specifically, executives, non-working supervisors, and armed guards). Even if Defendant is correct that this result cannot have been the parties' intent, it does not create an ambiguity with respect to whether Fund contributions must be made on behalf of Zittles and Kiddles employees, who are not executives, non-working supervisors, or armed guards. Defendant may not point to a supposed ambiguity that is wholly irrelevant to the case at bar to open the floodgates to all extrinsic evidence. Nor may Defendant use extrinsic evidence relevant to one ambiguity to create an ambiguity in an unrelated area of the agreement, as extrinsic evidence is properly admitted only to "resolve the ambiguity" justifying its admission. *See S. Indus. of Clover, Ltd. v. Kattan*, 148 F. App'x 5, 7 (2d Cir. 2005).

For the reasons stated above, the Court finds that the CBA unambiguously requires Defendant to make contributions on behalf of Zittles and Kiddles employees, and that any consideration of extrinsic evidence would be improper.

B.  Mutual Mistake

In addition to arguing that the CBA does not require it to make contributions for Zittles and Kiddles employees, Defendant also asserts the affirmative defense of mutual mistake. According to Defendant, "Zitomer and the Union operated under the mutual mistake that the 'all employees' language in the CBA meant only the employees of Zitomer's pharmacy operation." (Def.'s Mem. at 20.)

As an initial matter, the Second Circuit has held that the defense of mutual mistake may not be asserted by an employer seeking to avoid its obligations under a collective bargaining agreement to contribute to a multiemployer fund. *See Benson*, 907 F.2d at 314 ("[I]t is no defense to a claim under ERISA Section 515 . . . that no contract was formed because of unilateral or mutual mistake of fact.").

Second, even when a defense of mutual mistake is available, it requires a showing that "both parties . . . shared the same erroneous belief as to a material fact." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 46 (2d Cir. 1991). The undisputed evidence in this case, however, precludes a finding that

6

either party was mistaken about the contents of the collective bargaining agreement. Rather, the record suggests understanding on the part of both the Union and the Association that the agreement, as written, would cover Zittles and Kiddles employees. The record is undisputed that in the early 1970s, Sternheim, the owner of Zitomer, approached Pobiner because he "didn't feel that he would like to pay into the funds for those employees." (Pobiner Dep. Tr. at 28:14-15.)  Pobiner then "met with the powers that be at the union" and "discussed it thoroughly." (*Id.* at 29:2-4.)  Pobiner and Barasch, the union representative, subsequently reached a "mutual understanding" under which Zittles and Kiddles employees would not be covered by the fund. (*Id.* at 30:6-7.)

Far from showing a mutual mistake about the contents of the contract, the record shows a side agreement between Defendant and the Union that the parties believed to be necessary because they were unsatisfied with the collective bargaining agreement as it was written. The Second Circuit has clearly held, however, that "otherwise valid collection regulations promulgated by a multiemployer plan to effectuate contributions cannot be defeated by implied or unwritten agreements between employers and unions." *N.Y. State Teamsters Conference Pension and Ret. Fund v. United Parcel Serv.*, 382 F.3d 272, 280 (2d Cir. 2004); *see id.* at 281 ("The policies of Section 515 require that multiemployer plans be able to rely on the plain text of CBAs. Otherwise . . . multiemployer plans could become enmeshed in years of controversy concerning alleged unwritten agreements between employers and unions.").

Finally, even if it could be assumed that the 1970s side agreement between the Union and Defendant had any legal significance, the 2003 collective bargaining agreement specifically provides that "[a]ll prior agreements between the parties shall be deemed, [sic] terminated and considered to be null and void as of the date of this Agreement." (CBA at 17.)

The Court thus concludes that Defendant was bound by the plain terms of the collective bargaining agreement to make Fund contributions on behalf of both Kiddles and Zittles employees.

### C. Damages

When this action was filed in 2006, Plaintiffs sought an order compelling Defendant to supply its payroll records for audit. On September 11, 2007, Magistrate Judge Fox issued such an order.

Plaintiffs' auditors examined the materials produced by Defendant and determined that Defendant was liable for $319,584.00 in unpaid contributions for the period from January 1, 2003, to December 31, 2005. (Pls.' 56.1 ¶ 39.)  The audit report was subsequently revised to remove several supervisors not covered by the collective bargaining agreement to show $292,128.00 in unpaid contributions during the relevant period. (*Id.* ¶ 55.)

Defendant has introduced no evidence and made no argument suggesting that this figure is incorrect, other than to argue generally that Zittles and Kiddles employees do not fall within the collective bargaining agreement. Accordingly, the Clerk of the Court will be

7

directed to enter judgment on a principal amount of $292,128.00

ERISA further provides for an award of double interest on unpaid contributions to benefit funds. *See* 29 U.S.C. 1132(g)(2)(b)-(c); *Mason Tenders Dist. Council Welfare Fund v. DeLuccia Erectors & Scaffolding Supply, Inc.*, No. 01 Civ. 0464 (WK) (JCF), 2004 WL 170588, at *3 (S.D.N.Y. Jan. 29, 2004). Where the collective bargaining agreement is silent, such interest is calculated using the statutory rate set by 26 U.S.C. § 6621. *See* 29 U.S.C. § 1132(g). Plaintiffs have put forward undisputed evidence that the interest on the unpaid contributions through March 31, 2009 equals $108,466.62. (Pls.' 56.1 ¶ 75.) Thus, the Clerk of the Court will be directed to enter judgment equal to twice that amount to cover interest on the principal through March 31, 2009.

Plaintiff is also liable for double interest from March 31, 2009 through the date of judgment. The Clerk of the Court will be instructed to calculate this amount using the statutory interest rate set forth in 26 U.S.C. § 6621(a)(2) and to double the amount pursuant to 29 U.S.C. § 1132(g).

Finally, pursuant to § 1132(g)(2)(D), Defendant is liable for Plaintiffs' attorneys' and auditors' fees. Plaintiff shall make its application for these fees not later than March 8, 2010.

## IV. CONCLUSION

For the reasons stated above, the Court grants Plaintiffs' summary judgment motion and denies Defendant's summary judgment motion. The Clerk of the Court is accordingly directed to terminate the motions located at Doc. Nos. 46 and 49.

The Clerk of the Court is further directed to enter judgment in favor of Plaintiffs as follows:

Principal: $292,128.00

Interest: twice the following amounts:

(1) For the period until March 31, 2009: $108,466.62, and

(2) For the period from March 31, 2009, until the entry of judgment: to be calculated by the Clerk of the Court by applying the statutory interest rate set forth in 26 U.S.C. § 6621(a)(2) to the principal amount of $292,128.00 (delinquent contributions from January 1, 2003 to December 31, 2005).

Finally, Plaintiff is ordered to make its application for attorneys' and auditors' fees not later than March 8, 2010.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: February 23, 2010
       New York, New York

\* \* \*

Plaintiffs Martin Keane and Charlie Hall, Sr., are represented by Nathan V. Bishop, Friedman & Wolf, 1500 Broadway, Suite

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/23/10

8

2300, New York, NY 100136. Defendant Zitomer Pharmacy, Inc., is represented by Richard Milman, Perry S. Heidecker, and Michael J. Mauro, Milman Labuda Law Group PLLC, 3000 Marcus Ave., Suite 3W3, Lake Success, NY 10042.